# STATE OF MICHIGAN

# COURT OF APPEALS

WILLIAM L. LUNA,

        Plaintiff-Appellee,

v

CARRIE MARIE REGNIER,

        Defendant-Appellant.

FOR PUBLICATION
October 18, 2018
9:00 a.m.

No. 343382
Tuscola Circuit Court
Family Division
LC No. 10-026086-DC

Before: O'BRIEN, P.J., and K. F. KELLY and FORTH HOOD, JJ.

PER CURIAM.

Defendant appeals as of right the trial court's order suspending parenting time. We affirm the trial court's suspension of parenting time, but we remand for the trial court to conduct periodic hearings to determine whether reinstituting parenting time would be in the children's best interests.

Defendant and plaintiff were never married, but lived together as a family unit with their children, CR,[1] ZR, and DR. In January 2010, defendant traveled to Florida for approximately six months to assist her two sons from a previous relationship. The children remained in plaintiff's care in Michigan. In May 2010, defendant returned to Michigan to retrieve the children and bring them back to Florida with her. The children had been living with defendant in Florida for approximately six weeks when plaintiff initiated this custody action, procured an ex parte custody order, and retrieved the children from Florida. Defendant returned to Michigan in September 2010 to find the children living in "deplorable and unsanitary conditions" with plaintiff, and defendant reported this to Child Protective Service (CPS). A child protective proceeding was initiated against plaintiff, and the children were placed in foster care. Plaintiff entered a plea with respect to the allegations in the petition. A dispositional order indicates that defendant was granted supervised parenting time[2] and was ordered to cooperate with the

---

[1] CR has turned 18 and is no longer the subject of the court's jurisdiction.

[2] Although defendant was not a respondent in the child protective proceedings, she came under the family court's jurisdiction because of the now-defunct "one-parent doctrine." See *In re Sanders*, 495 Mich 394; 852 NW2d 524 (2014).

Department of Health and Human Services (DHHS), which imposed a treatment plan that included services for parenting skills, counseling, and a psychological evaluation. A supplemental petition was filed on March 16, 2011, that included defendant as a respondent based on concerns regarding emotional stability and parental visitations, and explained that defendant was not compliant with services.

The children were returned to plaintiff's custody in September 2011, and he filed for temporary custody. Defendant objected and a hearing was held in November 2011; defendant was not present. At the hearing, the foster care worker testified that she believed that it was in the children's best interests to remain in plaintiff's custody. At the conclusion of the hearing, plaintiff was awarded sole legal and physical custody of the children and defendant was granted two hours of supervised parenting time per week, consistent with that granted in the child protective proceeding. In March 2012, The DHHS successfully moved to suspend defendant's visitation, alleging that she had missed visits and that her "inconsistency and unpredictability" was damaging to the children. On November 13, 2012, the trial court terminated defendant's parental rights, based largely on her noncompliance with services. This Court affirmed,[3] but our Supreme Court remanded the case to the trial court based on its abolition of the "one-parent doctrine" in *In re Sanders*, 495 Mich 394; 852 NW2d 524 (2014).[4] The DHHS subsequently withdrew its petition, and defendant's parental rights were reinstated in June 2015.

Plaintiff filed a petition to suspend parenting time, explaining that the children had not seen defendant in three years, did not want to see her, and would "act out in frustration" at the mention of their mother. The trial court spoke to the children in chambers, and they "adamantly" expressed that they did not wish to spend any time with defendant. The trial court entered a temporary parenting time order granting defendant two hours of parenting time per week for two weeks and then four hours per week after that.

The evidentiary hearing continued in November 2015. The children's guardian ad litem (GAL) testified that the children expressed to her that they did not want to see defendant and were "struggling" with parenting time. She reported that the children had been "bolting" into the woods in order to avoid spending time with defendant. She was unsure why the children felt so negatively about their mother, and she recommended that the children remain in therapy and that defendant eventually be integrated into that therapy. Plaintiff's neighbors testified that, in their opinion, the children lived in a bad environment, full of questionable people, and suffered from a lack of discipline and supervision.

In December 2015, the GAL filed a motion to suspend defendant's parenting time because the children's negative behaviors were increasing and intensifying as visitation continued. According to the GAL, the children's counselors also believed that it would be beneficial to suspend parenting time because the stress and anxiety it caused them negatively

---

[3] *In re Regnier*, unpublished per curiam opinion of the Court of Appeals, issued July 23, 2015 (Docket No. 313657).

[4] *In re Reginier* [sic], 497 Mich 975 (2015).

impacted their progress on other mental, social, and educational issues. The trial court granted the GAL's motion, and defendant has not been allowed any parenting time since.

Defendant subsequently requested that the trial court rescind the previous order suspending her parenting time. At a hearing in May 2016, a therapist, who was referred to the family by CPS, testified that she worked with plaintiff and the children from October 2015 until February 2016 to assist with parenting, family building, and therapy. She said when her involvement began, there were problems in the home with positive parenting skills, budgeting, and hygiene, and concerns regarding visitation with defendant. The children "expressed dislike for the biological mother" and informed her that they were running away from parenting visits. The hearing was adjourned because defendant wanted to have psychological evaluations performed on the children. In the fall of 2017, after several delays arising from disagreements between the parties concerning the evaluations, DR and ZR underwent neurodevelopmental trauma assessments, which were submitted to the court. Their respective counselors also reviewed the assessments and rendered opinion letters to the court.

The trial court found that the children had an established custodial environment with plaintiff. After considering the best-interest factors in MCL 722.23, the trial court concluded that it was "convinced by clear and convincing evidence that parenting time should be completely suspended" because "contact with mother may be harmful to the children's mental and emotional health at the present time." The trial court entered an order indicating that parenting time was suspended until the minor children requested contact with defendant. Defendant now appeals as of right.

Defendant first argues that there was insufficient evidence for the trial court to find by clear and convincing evidence that parenting time with defendant would endanger the children's mental or emotional health. We disagree.

"Orders concerning parenting time must be affirmed on appeal unless the trial court's findings were against the great weight of the evidence, the court committed a palpable abuse of discretion, or the court made a clear legal error on a major issue." *Shade v Wright*, 291 Mich App 17, 20-21; 805 NW2d 1 (2010) (quotation marks and citation omitted). "The child's best interests govern a court's decision regarding parenting time." *Id*. "It is presumed to be in the best interests of a child for the child to have a strong relationship with both of his or her parents." MCL 722.27a(1). Therefore, "parenting time shall be granted to a parent in a frequency, duration, and type reasonably calculated to promote a strong relationship between the child and the parent granted parenting time." *Id*. However, if "it is shown on the record by clear and convincing evidence that it would endanger the child's physical, mental, or emotional health" the court need not order parenting time. MCL 722.27a(3).[5]

---

[5] A parent seeking to modify a parenting time order must first establish that there is a proper cause or change in circumstances that warrants the modification. *Lieberman v Orr*, 319 Mich App 68, 81; 900 NW2d 130 (2017). The trial court found that throughout the past three years there was an "ongoing change of circumstances warranting the court to proceed with a

In rendering its decision, the trial court conducted a lengthy analysis of the best-interest factors from MCL 722.23; the trial court also considered the children's trauma assessments and their counselor's opinion letters. Review of these confidential records lead this Court to conclude that this finding was not against the great weight of the evidence because the facts do not "clearly preponderate in the opposite direction." *Shade*, 291 Mich App at 21.

In regard to ZR, our review indicates that forced parenting time, especially in light of ZR's strongly expressed preference that he would potentially consider a relationship with defendant in the future at his own discretion, was likely to cause emotional trauma and would serve to drive a wedge further between mother and child, not foster a strong relationship. MCL 722.27a(1). Defendant contends that ZR's negative feelings cannot be attributed to her because she has had limited contact with the child in the previous six years. However, the trial court considered this fact when it recognized that defendant "has been restricted on the ability to give her children love, affection and guidance" and that the children's emotions and perceptions may be "unfounded." Defendant also argues that the trauma assessor and ZR's counselor did not "actually conclude" that his mental or emotional health would be damaged by parenting time. Although they did not directly state that "parenting time would emotionally or mentally harm" the child, it was not against the great weight of the evidence for the trial court to extrapolate that finding from their opinions and conclusions in the assessment and letter. *Shade*, 291 Mich App at 21.

Next, defendant argues that DR's assessment does not support the trial court's finding by clear and convincing evidence that parenting time would damage her mental or emotional health. While defendant may disagree with the assessment's conclusions, it supports the trial court's finding that parenting time could be emotionally or mentally damaging to DR. MCL 722.27a(3). We note that plaintiff and his wife discouraged DR from talking about defendant at the assessment; however, this brief example does not overshadow the assessor's conclusion. Furthermore, there was no finding by either the assessment or DR's counselor of the existence of any parental alienation. Both the assessor and the counselor opined that DR needed stability, and they did not opine that defendant could be a part of that stable environment. Overall, we cannot conclude that the trial court's finding that parenting time with defendant would harm DR mentally or emotionally was against the great weight of evidence. *Shade*, 291 Mich App at 21.

Defendant argues that the trial court ignored substantial evidence of positive parenting and her great concern for her children; she also notes that ZR and DR may have been negatively influenced by CR, who is no longer subject to the court's jurisdiction. However, whether parenting time went well from September 2015 until December 2015 and whether CR instigated problems is not of consequence as to whether parenting time would be harmful for the children

---

determination." The parties do not dispute this finding. Further, "[i]n a parenting-time matter, when the proposed change would not affect the established custodial environment, the movant must prove by a preponderance of the evidence that the change is in the best interests of the child." *Id*. at 84. The trial court found that the suspension of parenting time would not affect the established custodial environment. The parties also do not dispute this finding on appeal.

*now*. We note that the trial court did not find any evidence that defendant acted inappropriately with her children or did anything to purposely damage their mental or emotional health. As the trial court noted, the children's anxiety and stress may very well be "unfounded." However, it found it important to give their perceptions credence. This was supported by the assessments and counselor's letters and was not against the great weight of the evidence. *Id*.

Defendant also argues that plaintiff has actively estranged the children from her and spoken ill of her in front of them, and that his wife has hurled insults and obscenities at her in front of the children. However, there was also testimony that plaintiff encouraged the children to attend parenting time, and plaintiff testified that he did not know why the children felt negatively toward defendant and that he did not speak negatively about her in front of them. The trial court had the discretion to weigh the credibility of the evidence and the witness testimony. *MacIntyre v MacIntyre (On Remand)*, 267 Mich App 449, 459; 705 NW2d 144 (2005). We are not in a position to second-guess that determination.

In sum, the trial court's findings that there was clear and convincing evidence that the children's mental and emotional health would be endangered by parenting time was not against the great weight of the evidence, because the facts do not "clearly preponderate in the opposite direction." *Shade*, 291 Mich App at 21. This finding was supported by psychological assessments of both children, letters from their counselors, and the children's own expressions. Therefore, the trial court's order suspending parenting time is not "so palpably gross and violative of fact and logic that it evidences a perversity of will, a defiance of judgment, or the exercise of passion or bias." *Id*.

Finally, defendant argues that the trial court's order suspending her parenting time without ordering reunification therapy constituted a de facto termination of her parental rights. While we do not believe that the trial court abused its discretion in suspending defendant's parenting time and declining to order reunification therapy, we do believe that it is necessary to remand for the trial court to conduct periodic hearings to determine whether the children wish to reinitiate contact with defendant and whether resumption of parenting time would be in their best interests.

Defendant's parenting time has been suspended since December 2015, and the trial court's order provides no mechanism for it to review whether the children may wish to reinitiate contact with defendant unless they or plaintiff proactively relay this information to the trial court, which appears unlikely in light of the history of this case. The trial court should have ordered periodic hearings to receive information from the children's counselors or their GAL in order to determine whether parenting time would be in their best interests in the future. Without a mechanism for further review, defendant's parental rights are effectively nonexistent.

Affirmed in part, as detailed above, but remanded for the trial court to conduct periodic review hearings. We do not retain jurisdiction.

/s/ Colleen A. O'Brien
/s/ Kirsten Frank Kelly
/s/ Karen M. Fort Hood