*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

STEVEN DEKARSKE,

          Plaintiff/Counterdefendant-Appellant,

v

LINDSEY LOPEZ,

          Defendant/Counterplaintiff-Appellee.

UNPUBLISHED
December 28, 2023

No. 366704
Ingham Circuit Court
Family Division
LC No. 22-003626-DC

Before: REDFORD, P.J., and SHAPIRO and YATES, JJ.

PER CURIAM.

In this case, the trial court conducted a full evidentiary hearing related to child custody and child visitation matters. After the taking of proofs and consideration of all the evidence, the trial court awarded the parties joint legal custody of CAD, and awarded defendant-mother sole physical custody. After addressing the best-interest factors, MCL 722.23, and the parenting time factors, MCL 722.27a(7), the trial court found that parenting time with plaintiff-father was in CAD's best interests. Thereafter however, the trial court suspended plaintiff's parenting time until he surrendered access to the contents of three encrypted or password-protected USB thumb drives.

Plaintiff appeals by right the trial court's order awarding him supervised parenting time of the child, CAD, but also suspending his parenting time. Plaintiff challenges only the suspension of his parenting time. Because clear and convincing evidence did not demonstrate that supervised parenting time would endanger CAD or that suspending parenting time was in CAD's best interests, we vacate the suspension of plaintiff's supervised parenting time.

## I. BACKGROUND

In 2000, plaintiff was convicted, by a plea of no contest, of fourth-degree criminal sexual conduct (CSC-IV), for which he served five years of probation and completed a sexual rehabilitation program. The parties met in 2016 through an online dating site. Plaintiff disclosed his prior conviction to defendant on their first date, but misrepresented the underlying circumstances. Plaintiff told defendant that, when he was 17 years old, he had sexually abused an 11-year-old girl. In fact, plaintiff sexually abused his half-sister, who was three years old at the time, approximately 30 times. The parties moved in together in 2017. At that time, defendant had

-1-

a nine-year-old son, BL, who also resided with the parties. The parties have one child together, CAD, who was born in 2019.

In 2022, defendant discovered the "presentencing report documents" describing the true nature of plaintiff's CSC-IV conviction, and also sexual assaults that he committed on two other children before his conviction in 2000. Defendant, who was concerned that plaintiff had sexually abused CAD and BL, took pictures of those documents and three USB thumb drives to the police, and also contacted Children's Protective Services. The parties' cohabitation and relationship ended around that time.

Detective Kelly Ebersole testified that she was told the drives were encrypted or password-protected, and she contacted plaintiff to obtain the passwords to ensure there was nothing illegal on them before returning them. Plaintiff made approximately 60 attempts to communicate with Ebersole, and, when they finally communicated, plaintiff "became very irate" and refused to provide any passwords, telling Ebersole that she needed to contact his lawyer and to get a search warrant. Ebersole testified that there was no criminal investigation regarding the thumb drives, and she did not have probable cause for a warrant. Ebersole attempted to forensically interview CAD and BL, but was unable to forensically interview CAD, then four years old, because he became too scared upon walking into the interview room. Ebersole did successfully interview BL, however, who made no disclosures of any sexual assault or physical abuse.

Plaintiff initiated this current action to establish custody and parenting time for CAD. The trial court held an evidentiary hearing where it heard testimony from the parties and Ebersole. Defendant testified that she became concerned about CAD and plaintiff when she observed CAD "cupping himself," i.e., reaching his hands in front of his pants. This occurred when CAD was one year old, and defendant did not believe it was normal behavior. Defendant described another occasion when, after the last time plaintiff watched CAD, she went "to change his diaper, [but he was] tossing and turning, his legs stiff as a board, tilted to the side[,]" explaining she "literally had to pry [her] son's legs apart to change his diaper." Defendant requested that plaintiff receive supervised parenting time. Plaintiff denied sexually assaulting CAD or BL, and testified that he did not desire a sexual relationship with a minor. Plaintiff admitted that, according to the rehabilitation program he completed, he was still considered a risk to young children. As for the thumb drives, plaintiff admitted that one of the drives was the backup for his computer, but he denied having the passwords or telling the police that he had the passwords.

After the completion of the taking of all proofs, the trial court awarded the parties joint legal custody of CAD and awarded defendant sole physical custody. After addressing the best-interest factors, MCL 722.23, and the parening-time factors, MCL 722.27a(7), the trial court found that parenting time with plaintiff was in CAD's best interests. The trial could not find by a preponderance of the evidence that plaintiff had assaulted CAD or BL. However, given the trial court's observations that plaintiff posed a potential risk to CAD, the trial court ordered that his parenting time be supervised. The trial court acknowledged that plaintiff had good reason not to divulge any passwords to law enforcement, but concluded that plaintiff knew what was on the drives, knew the passwords to the drives, and believed there was something on the drives that he did not want the police to see.

After having made these statements, the trial court further concluded that it needed "to know whether or not there's child pornography" on the drives, "because if there is I don't think you deserve any contact with your child." It also opined that it would "make us feel better about going forward as to when we decided it's going to be safe to allow you to have unsupervised time with your son." The trial court therefore ordered that plaintiff's parenting time be suspended until plaintiff surrendered access to the contents of the drives and no criminal activity or pornography was found.

## II. ANALYSIS

Plaintiff argues that the trial court failed to find by clear and convincing evidence that supervised parenting time would endanger CAD's physical, mental, or emotional health in the absence of knowledge of the content of the thumb drives, and therefore the trial court's conditional suspension of plaintiff's supervised parenting time was clear legal error. We agree.[1]

"The child's best interests govern a court's decision regarding parenting time." *Luna v Regnier*, 326 Mich App 173, 179; 930 NW2d 410 (2018) (quotation marks and citation omitted). "It is presumed to be in the best interests of a child for the child to have a strong relationship with both of his or her parents." MCL 722.27a(1). Accordingly, "parenting time shall be granted to a parent in a frequency, duration, and type reasonably calculated to promote a strong relationship between the child and the parent granted parenting time." *Id.*

"A parenting time order may contain any reasonable terms or conditions that facilitate the orderly and meaningful exercise of parenting time by a parent," including "that parenting time

---

[1] "All custody orders must be affirmed on appeal unless the circuit court's findings were against the great weight of the evidence, the circuit court committed a palpable abuse of discretion, or the circuit court made a clear legal error on a major issue." MCL 722.28. A finding of fact is against the great weight of the evidence if the evidence clearly preponderates in the opposite direction. *Pennington v Pennington*, 329 Mich App 562, 570; 944 NW2d 131 (2019). "Clear legal error occurs when the trial court incorrectly chooses, interprets, or applies the law." *Kuebler v Kuebler*, ___ Mich App ___, ___; ___ NW2d ___ (2023) (Docket No. 362488); slip op at 7 (quotation marks and citation omitted).

We disagree with defendant that plaintiff waived or otherwise failed to preserve his challenge to the trial court's conditional suspension of his parenting time. Importantly, a party "need not preserve an objection to 'a finding or decision' made by the trial court, MCR 2.517(A)(7), or, at least under some circumstances, to other acts or omissions undertaken sua sponte by a court." *Glasker-Davis v Auvenshine*, 333 Mich App 222, 227-228; 964 NW2d 809 (2020). Plaintiff is not challenging the admission of evidence regarding the thumb drives, and nowhere in the record is there any indication that conditional suspension of plaintiff's parenting time was under consideration until the trial court announced its bench ruling. Although plaintiff did, *after* the trial court announced its bench ruling, suggest turning the drives over to a third party, plaintiff did so as a point of clarification and never expressed approval of the trial court's ruling. We conclude that, under the circumstances, plaintiff was not obligated to place on the record an objection to the trial court's sua sponte decision to suspend his parenting time.

occur in the presence of a third person or agency." MCL 722.27a(9)(f). However, this provision allowing for the imposition of reasonable conditions on parenting time must be read in harmony with MCL 722.27a(3), which provides that "[a] child has a right to parenting time with a parent unless it is shown on the record by clear and convincing evidence that it would endanger the child's physical, mental, or emotional health." See *Butters v Butters*, 342 Mich App 460, 472; ___ NW2d ___ (2022), vacated in part on other grounds 510 Mich 1096 (2022). A trial court commits clear legal error when it suspends a parent's parenting time without making "the requisite findings regarding the effect of parenting time with [the parent] on [the child's] physical, mental, or emotional well-being." *Barretta v Zhitkov*, ___ Mich App ___, ____; ___ NW2d ___ (2023) (Docket Nos. 364921, 365078); slip op at 11.

The trial court was unable to find by a preponderance of the evidence that plaintiff had assaulted CAD or BL. Further, the trial court unambiguously determined that it *was* in CAD's best interest to maintain an ongoing bond with plaintiff, so it ordered that plaintiff must receive four hours of parenting time a week. However, the trial court nonetheless believed there was a risk that plaintiff might harm CAD if left alone with the child, and therefore ordered that plaintiff's parenting time be supervised. The record evidence supports the trial court's finding that plaintiff should not have unsupervised parenting time, and plaintiff does not challenge on appeal whether his parenting time should be supervised.

Instead, this appeal concerns whether the trial court erred by suspending plaintiff's supervised parenting time until he turns over the passcodes for the three thumb drives. In suspending plaintiff's parenting time, the trial court failed to identify any harm plaintiff could perpetrate on CAD under close supervision. The trial court did refer to an incident when plaintiff failed to "follow the ground rules" at a supervised parenting time visit by taking CAD to the bathroom alone. There is no indication, however, that anything inappropriate took place in the bathroom. Further, that parenting time visit was supervised by plaintiff's brother, and under the trial court's order, plaintiff's parenting time will now be supervised by an unrelated, third-party parenting time agency.

The trial court expressed its belief that it had "to know whether or not there's child pornography on there because if there is [the trial court did not] think [plaintiff] deserve[d] any contact with [his] child." However, the inquiry is what is in CAD's best interests, not what a parent "deserves." The trial court also opined that knowing the contents of the thumb drives would "make us feel better about going forward as to when we decided it's going to be safe to allow you to have unsupervised time with your son." It is true that the contents of the thumb drives might be relevant to the question of whether plaintiff's parenting time could ever be *unsupervised*. However, in the absence of a threat of harm posed by *supervised* parenting time, the suspension of plaintiff's parenting time appears to be intended as an impermissible sanction or an impermissible attempt to compel compliance with a court order. See, e.g., *Johnson v Johnson*, unpublished per curiam opinion of the Court of Appeals, issued April 6, 2023 (Docket

No. 361277), p 11 n 3 ("Suspension of parenting time cannot be used as a penalty to punish even a recalcitrant parent.").[2]

In sum, the trial court failed to find by clear and convincing evidence that supervised parenting time would endanger CAD's physical, mental, or emotional health in the absence of knowledge of the content of the thumb drives. Therefore, we conclude that the trial court's suspension of plaintiff's supervised parenting time conditioned on surrendering access to the thumb drives was clearly erroneous.

The trial court's conditional suspension of plaintiff's supervised parenting time is vacated.[3] We remand for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ James Robert Redford
/s/ Douglas B. Shapiro
/s/ Christopher P. Yates

---

[2] Unpublished opinions are "not precedentially binding under the rule of stare decisis." MCR 7.215(C)(1). However, unpublished opinions may be considered for their persuasive value. *People v Otto*, ___ Mich App ___, ___ n 11; ___ NW2d ___ (2023) (Docket No. 362161); slip op at 12 n 11.

[3] Plaintiff makes a cursory argument that this matter should be remanded before a different trial judge. A party seeking to disqualify a judge carries a heavy burden of overcoming the presumption that the trial judge is unbiased, *Mitchell v Mitchell*, 296 Mich App 513, 524; 823 NW2d 153 (2012), and an erroneous ruling does not establish a disqualifying basis. *Kuebler*, ___ Mich App at ___; slip op at 30-31. Thus, plaintiff fails to establish a basis for remanding to a different judge.